JONATHAN D. GUYNN
Acting Assistant Attorney General
Civil Division
MICHELLE R. BENNETT
Assistant Branch Director
Federal Programs Branch
STEPHEN M. PEZZI (D.C. Bar 995500)
Chief Litigation Counsel
PARDIS GHEIBI (D.C. Bar No. 90004767)
Trial Attorney, U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C. 20005
Tel.: (202) 305-3246
Email: pardis.gheibi@usdoj.gov

*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| BIOTECHNOLOGY INNOVATION ORGANIZATION, *et al.*,<br>*Plaintiffs,*<br>v.<br>ROBERT F. KENNEDY, JR., in his official capacity as SECRETARY OF THE UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, *et al.*,<br>*Defendants* | Case No. 5:26-cv-13372-PCP<br>**DEFENDANTS' MOTION TO DISMISS, OR IN THE ALTERNATIVE, TRANSFER**<br>Judge: Hon. P. Casey Pitts<br>Courtroom 8 |

## TABLE OF CONTENTS

MOTION ........ 1
RELIEF SOUGHT ........ 1
MEMORANDUM OF POINTS AND AUTHORITIES ........ 1
INTRODUCTION ........ 1
BACKGROUND ........ 2
ARGUMENT ........ 4
I. THE FIRST-TO-FILE RULE WARRANTS DISMISSAL OR TRANSFER. ........ 4
A. The Three Factors Weigh in Favor of Applying the First-To-File Rule. ........ 4
B. No Equitable Considerations Weigh Against the Application of the Rule. ........ 12
C. The Court Should Dismiss the Suit Without Prejudice. ........ 13
D. In the Alternative, This Court Should Transfer This Case to the District of Columbia ........ 14
II. TRANSFER IS ALSO WARRANTED UNDER 28 U.S.C. § 1404(a). ........ 14
CONCLUSION ........ 17

## TABLE OF AUTHORITIES

**CASES**

*Adoma v. Univ. of Phoenix, Inc.*,
711 F. Supp. 2d 1142 (E.D. Cal. 2010) .......... 10

*Alltech, Inc. v. Myriad Dev., Inc.*,
No. 08-cv-00045, 2008 WL 5119670 (W.D. Va. Dec. 5, 2008) .......... 15

*Alltrade, Inc. v. Uniweld Prods., Inc.*,
946 F.2d 622 (9th Cir. 1991) .......... 4, 12, 13, 14

*Aqua Connect, Inc. v. SHI Int'l Corp.*,
No. 19-cv-05662-AB (JPR), 2019 WL 8883452 (C.D. Cal. Dec. 16, 2019) .......... 7

*Bodley v. Whirlpool Corp.*,
No. 17-cv-05436-JST, 2018 WL 2357640 (N.D. Cal. May 24, 2018) .......... 13

*Cedars–Sinai Med. Ctr. v. Shalala*,
125 F.3d 765 (9th Cir. 1997) .......... 13

*Centocor, Inc. v. MedImmune, Inc.*,
No. 02-cv-03252-CRB, 2002 WL 31465299 (N.D. Cal. Oct. 22, 2002),
*dismissed*, 55 F. App'x 928 (Fed. Cir. 2003) .......... 6

*Chamber of Com. of the U.S. v. Fed. Trade Comm'n*,
732 F. Supp. 3d 674 (E.D. Tex. 2024) .......... 6, 7, 9

*Goldman v. Unum Life Ins. Co. of Am.*,
838 F. Supp. 3d 1020 (N.D. Cal. 2026) .......... 16, 17

*Henry v. Home Depot U.S.A., Inc*,
No. 14-cv-04858-JST, 2016 WL 4538365 (N.D. Cal. Aug. 31, 2016) .......... 8, 12

*Hill v. Robert's Am. Gourmet Food, LLC*,
No. 13-cv-00696-YGR, 2013 WL 3476801 (N.D. Cal. July 10, 2013) .......... 6, 13

*Hoban v. FDA*,
No. 18-cv-269-JNE (LIB), 2018 WL 3122341 (D. Minn. June 26, 2018) .......... 9, 15, 16, 17

*Hunt v. Washington State Apple Advert. Comm'n*,
432 U.S. 333 (1977) .......... 11

*In re Bozic*,
888 F.3d 1048 (9th Cir. 2018) .......... 4, 13

*Intersearch Worldwide, Ltd. v. Intersearch Grp., Inc.*, 544 F. Supp. 2d 949 (N.D. Cal. 2008) ........ 4, 5, 13, 14

*Jones v. GNC Franchising, Inc.*, 211 F.3d 495 (9th Cir. 2000) ........ 14, 15, 16

*Kohn L. Grp., Inc. v. Auto Parts Mfg. Miss.*, 787 F.3d 1237 (9th Cir. 2015) ........ *passim*

*Lexington v. Cheek & Zeehandelar, LLP*, No. 1:06-cv-2029, 2007 WL 593560 (N.D. Ohio Feb. 21 2007) ........ 15

*Lou v. Belzberg*, 834 F.2d 730 (9th Cir. 1987) ........ 16

*Marshak v. Reed*, No. 96-cv-2292-NG (MLO), 2000 WL 33152076 (E.D.N.Y. Oct. 17, 2000) ........ 7

*Molander v. Google LLC*, 473 F. Supp. 3d 1013 (N.D. Cal. 2020) ........ 13

*Nat'l Health Fed'n v. Weinberger*, 518 F.2d 711 (7th Cir. 1975) ........ 7, 12, 13

*Nat'l Min. Ass'n v. U.S. Army Corps of Eng'rs*, 145 F.3d 1399 (D.C. Cir. 1998) ........ 9

*Pac. Coast Breaker, Inc. v. Conn. Elec., Inc.*, No. 10-cv-3134-KJM (EFB), 2011 WL 2073796 (E.D. Cal. May 24, 2011) ........ 6

*Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93 (9th Cir. 1982) ........ 4, 6

*Renesas Elecs. Am. Inc. v. Monterey Rsch., LLC*, No. 24-cv-06223-JSC, 2024 WL 5077109 (N.D. Cal. Dec. 10, 2024) ........ 6, 7

*Ross v. U.S. Bank Nat.'l Ass'n*, 542 F. Supp. 2d 1014 (N.D. Cal. 2008) ........ 10

*Ruckus Wireless, Inc. v. Harris Corp.*, No. 11-cv-01944-LHK, 2012 WL 588792 (N.D. Cal. Feb. 22, 2012) ........ 14

*Save Power Ltd. v. Syntek Fin. Corp.*, 121 F.3d 947 (5th Cir. 1997) ........ 6

*Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26 (1976) ........ 10

*SMIC, Americas v. Innovative Foundry Techs. LLC*,
473 F. Supp. 3d 1021 (N.D. Cal. 2020) ... 13, 14

*Stewart Org., Inc. v. Ricoh Corp.*,
487 U.S. 22 (1988) ... 14, 15

*Torres v. Segway, Inc.*,
No. 25-cv-05005-BLF, 2026 WL 311504 (N.D. Cal. Feb. 5, 2026),
*transferred to In re Segway Scooter Recall Litig.*,
No. 25-cv-369-GBW, 2026 WL 2210976 (D. Del. July 31, 2026) ... 12, 14

*United States v. Texas*,
599 U.S. 670 (2023) ... 9

*Wallerstein v. Dole Fresh Vegetables, Inc.*,
967 F. Supp. 2d 1289 (N.D. Cal. 2013) ... 8, 14

*Young v. L'Oreal USA, Inc.*,
526 F. Supp. 3d 700 (N.D. Cal. 2021) ... 9, 12, 14

**CONSTITUTION**

U.S. Const. art. I, § 9, cl. 7 ... 5

**STATUTES**

5 U.S.C. § 706 ... 9

28 U.S.C. § 1391 ... 15

28 U.S.C. § 1404 ... *passim*

31 U.S.C. § 3302 ... 5

42 U.S.C. § 1315a ... 2, 5

**REGULATIONS**

*Global Benchmark for Efficient Drug Pricing (GLOBE) Model*,
91 Fed. Reg. 62,936 (Oct. 2, 2026) ... 2

**OTHER AUTHORTITIES**

*Biogen*,
https://www. biogen.com/company/contact-us.html (last visited Nov. 22, 2026) ... 16

*Daiichi Sankyo*,
https://www.daiichisankyo.com/abo ut_us/corporate_info/group/ (last visited Nov. 22, 2026) ... 16, 17

Gabrielle Wanneh, *GLOBE Exemptions May Still Affect Handful of Drug-Making Companies*, Inside Health Pol'y (Oct. 2, 2026), archived at https://perma.cc/Y4FY-A6DX ............ 6

Our Member Companies, Pharm. Rsch. & Mfrs. of Am., https://phrma.org/about#members (last visited Nov. 20, 2026) ............ 6, 10, 11

Pls.' Rule 7.1 Disclosure & Civ. L.R. 3-15 Certification, ECF No. 3, https://perma.cc/57FT-8MXA ............ 9, 10

*Takeda Pharmaceuticals*, https://www.takeda.com/en-us/main-addresses/ (last visited Nov. 22, 2026) ............ 16, 17

## MOTION

Defendants, the United States Department of Health and Human Services ("HHS"), the Secretary of HHS (in his official capacity), the Centers for Medicare & Medicaid Services ("CMS"), the Administrator of CMS (in his official capacity), the Center for Medicare and Medicaid Innovation ("CMMI"), and the Director of CMMI (in his official capacity), hereby move the Court for an order dismissing the claims against them without prejudice, or in the alternative, transferring this case to the United States District Court for the District of Columbia pursuant to the first-to-file rule. In the alternative, Defendants move for a transfer to the United States District Court for the District of Columbia under 28 U.S.C. § 1404(a).

## RELIEF SOUGHT

Defendants seek an order dismissing the claims against them without prejudice. Alternatively, Defendants seek a transfer to the United States District Court for the District of Columbia.

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

This case is duplicative of an earlier-filed suit in the District of Columbia that challenges the same agency regulation—*i.e.*, GLOBE—pursuant to identical claims under the Administrative Procedure Act ("APA") against the exact same six Defendants. Although GLOBE only regulates drug manufacturers, no actual drug manufacturer is a plaintiff in either suit. Both suits are instead brought by pharmaceutical associations that purport to represent the interests of their (substantially overlapping) drug-manufacturer members. In this light, allowing both suits to proceed simultaneously in two different jurisdictions would double the burdens on the federal judiciary, risk subjecting the same parties to conflicting or inconsistent judgments, and permit the single-digit number of drug manufacturers participating in GLOBE—who have chosen to sue through multiple associations rather than in their own name—two bites at the same apple. In such circumstances, the first-to-file rule warrants dismissal of this lawsuit without prejudice, especially where, as here, nothing prevents Plaintiffs from then immediately refiling their claims in the District of Columbia. At a minimum, the same considerations warrant a transfer to the District of Columbia, which would at least solve the practical problems of forcing the government to effectively litigate the same claims

twice, simultaneously, in two different fora, against (effectively) the same handful of drug manufacturers, all while risking inconsistent court-ordered obligations.

In the alternative, Defendants move for a transfer under 28 U.S.C. § 1404(a), as this case could have been brought in the District of Columbia, and the interests of justice favor transfer: both to avoid the risk of inconsistent court-ordered obligations, and for the convenience of the parties, most of whom are based in the District of Columbia-Maryland metropolitan area.

## BACKGROUND

On October 2, 2026, CMS issued a rule—called Global Benchmark for Efficient Drug Pricing ("GLOBE" or "Rule")—that seeks to test an innovative payment model under 42 U.S.C. § 1315a(a)(1), with respect to a small subset of the prescription drugs furnished as part of Medicare Part B each year. In particular, a single-digit number of likely participating drug manufacturers ("Participating Manufacturers") will pay rebates to the government when certain, specified drugs are furnished to Medicare beneficiaries who reside in a randomly selected subset of geographic areas, which encompasses approximately 25% of Medicare Part B enrollees. *See* CMS, *Global Benchmark for Efficient Drug Pricing (GLOBE) Model*, 91 Fed. Reg. 62,936, 62,937-38 (Oct. 2, 2026).

On October 7, 2026, a membership association called the Pharmaceutical Research and Manufacturers Association ("PhRMA") filed suit in the U.S. District Court for the District of Columbia challenging GLOBE under the APA. *See* Compl., *PhRMA v. Kennedy*, 26-cv-03498-RCL, (D.D.C. Oct. 7, 2026) ("*PhRMA v. Kennedy*"), ECF No. 1, ("*PhRMA* Compl."). PhRMA describes itself as "the research-based pharmaceutical industry's principal policy advocate," *id.* ¶ 24, and claims that at least some of the Participating Manufacturers are its members, *see, e.g., id.* ¶ 25 ("PhRMA's members sell drugs subject to GLOBE."). PhRMA named six Defendants: HHS, the Secretary of HHS (in his official capacity), CMS, the Administrator of CMS (in his official capacity), CMMI, and the Director of CMMI (in his official capacity). *Id.* ¶¶ 26-31.

PhRMA alleges that GLOBE exceeds CMS's statutory authority because, among other things, "[i]t does not 'test' anything about 'program expenditures'" as required under the operative statute, *id.* ¶ 175, and its interpretation is inconsistent with the "major questions doctrine," *id.* ¶ 176. It also alleges that

GLOBE "violates other statutory provisions" pertaining to "appropriations." *Id.* ¶ 177. Lastly, PhRMA alleges that GLOBE violates "both the Presentment Clause and the nondelegation doctrine." *Id.* ¶ 181. PhRMA seeks vacatur of the Rule along with accompanying injunctive and declaratory relief. *Id.* at 66, Prayer for Relief. The parties in *PhRMA* have agreed to a four-brief schedule for cross-motions for summary judgment, set to conclude on January 29, 2027. Scheduling Order, *PhRMA v. Kennedy*, ECF No. 20 (D.D.C. Nov. 2, 2026). On November 4, 2026, PhRMA filed its motion for summary judgment. *See* Mem. in Supp. of Pl.' Mot. for Summ. J., *PhRMA v. Kennedy*, ECF No. 21 ("*PhRMA* MSJ Br.").

Almost a month after PhRMA filed its suit, on November 6, 2026, three more pharmaceutical associations—the Biotechnology Innovation Organization ("BIO"), the California Life Sciences Association ("CLS"), and Biocom California—brought this suit. *See* Compl., ECF No. 1 ("*BIO* Compl."). Similar to PhRMA, Plaintiffs claim that their mission is, among other things, "advocating for effective national, state, and local policies that affect entrepreneurs and life sciences businesses." *Id.* ¶ 20; *see also id.* ¶ 23 ("Biocom is an international life sciences advocacy and business organization that exists to advance, foster, and encourage the life sciences industry in the state of California"); *see also id.* ¶ 17 (claiming that "BIO was founded to advance the interests of the biotechnology industry" by "establishing and furthering policies that foster biomedical innovation, expanding access to life-changing medicines, and securing America's position as the global leader in biotechnology"). Like PhRMA, Plaintiffs claim that at least some of the Participating Manufacturers are their members. *See, e.g., id.* ¶ 19 ("BIO members are subject to GLOBE's rebates.").

Plaintiffs' claims are identical to PhRMA's. Specifically, Plaintiffs challenge GLOBE under the APA by alleging that GLOBE exceeds CMS's statutory authority because, among other things, it "is not a 'test'" as required by the operative statute, *id.* ¶ 111, and "violates the major questions doctrine," *id.* ¶ 113. They also allege that the Rule "violat[es] . . . the Appropriations Clause and related statutes." *Id.* ¶ 119. Finally, Plaintiffs also claim that the Rule "raises a grave Presentment Clause problem" and "also violates the nondelegation doctrine." *Id.* ¶¶ 126-27. Plaintiffs seek the exact same relief sought in *PhRMA*—*i.e.*, vacatur of the Rule along with accompanying injunctive and declaratory relief, *see id.* at 44, Prayer for Relief, and name the same six Defendants, *id.* ¶¶ 26-31.

Before filing this motion, undersigned counsel for Defendants conferred with counsel for Plaintiffs, who reported that Plaintiffs oppose Defendants' motion. *See* Decl. Jeffrey L. Handwerker, ECF No. 17-1 ¶¶ 8, 11.

## ARGUMENT

## I. THE FIRST-TO-FILE RULE WARRANTS DISMISSAL OR TRANSFER.

The first-to-file rule is "a judicially created 'doctrine of federal comity,' which applies when two cases involving 'substantially similar issues and parties' have been filed in different districts." *In re Bozic*, 888 F.3d 1048, 1051 (9th Cir. 2018) (citation omitted). "Under [this] rule, the second district court has discretion to transfer, stay, or dismiss the second case in the interest of efficiency and judicial economy." *Id.* at 1051-52 (citation omitted). The rule "was developed to serve[ ] the purpose of promoting efficiency well and should not be disregarded lightly." *Alltrade, Inc. v. Uniweld Prods., Inc.*, 946 F.2d 622, 625 (9th Cir. 1991) (citation modified); *see also Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93, 95 (9th Cir. 1982) ("Normally sound judicial administration would indicate that when two identical actions are filed in courts of concurrent jurisdiction, the court which first acquired jurisdiction should try the lawsuit and no purpose would be served by proceeding with a second action.").

As the Ninth Circuit has made clear, "the first-to-file rule should not be applied 'mechanically.'" *Kohn L. Grp., Inc. v. Auto Parts Mfg. Miss.*, 787 F.3d 1237, 1240 (9th Cir. 2015) (quoting *Pacesetter Sys.,* 678 F.2d at 95). Thus, neither the issues nor the parties must be "identical" for the rule to apply; rather, the rule is applicable so long as the parties and issues are "substantially similar." *Id.* at 1240-41. This flexible approach allows the district court to prevent "gamesmanship," and apply the rule in a way that serves the rule's overarching "policy . . . to maximize judicial economy, consistency, and comity." *Id.* at 1240. In determining whether the first-to-file rule is applicable, "a court analyzes three factors:" (1) "chronology of the lawsuits," (2) "similarity of the issues," and (3) "similarity of the parties." *Id.* (citation modified). Here, these factors favor the application of the first-to-file rule.

### A. The Three Factors Weigh in Favor of Applying the First-To-File Rule.

***Chronology.*** In determining whether chronology is satisfied "[a]ll th[e] Court is concerned with is whether the [other jurisdiction] had the matter before it first." *Intersearch Worldwide, Ltd. v. Intersearch*

*Grp., Inc.*, 544 F. Supp. 2d 949, 958 (N.D. Cal. 2008). *PhRMA* was filed in the District of Columbia on October 7, 2026. This case was filed in the Northern District of California on November 6, 2026. Thus, *PhRMA* is the "first-filed" case.

***Similarity of issues.*** Although for the first-to-file rule to apply, "[t]he issues in both cases . . . need not be identical," *Kohn*, 787 F.3d at 1240, the APA claims here are, indeed, identical to those raised in *PhRMA*. *Compare, e.g.*, *BIO* Compl. ¶ 111 (alleging that the GLOBE Rule exceeds CMS's statutory authority because it "is not a 'test'"), *with PhRMA* Compl. ¶ 175 (alleging that the Rule exceeds CMS's statutory authority because "[i]t does not 'test' anything about 'program expenditures' (citing 42 U.S.C. § 1315a)); *compare BIO* Compl. ¶ 113 ("CMS's interpretation violates the major questions doctrine."), *with PhRMA* Compl. ¶ 176 ("The major questions doctrine resolves any doubt that GLOBE is not authorized by Section 1115A."); *compare BIO* Compl. ¶ 123 (alleging that the Rule "is not an 'Appropriation[] made by Law,' U.S. Const. art. I, § 9, cl. 7, and cannot supply the statutory authority that the Miscellaneous Receipts Act [31 U.S.C. § 3302(b)] requires' (alteration in original)), *with PhRMA* MSJ Br. at 42 ("GLOBE also violates federal appropriations laws," including 31 U.S.C. § 3302(c)(1)); *compare BIO* Compl. ¶¶ 126-127 (alleging that the Rule "raises a grave Presentment Clause problem" and "also violates the nondelegation doctrine"), *with PhRMA* Compl. ¶ 181 (alleging that the Rule violates "both the Presentment Clause and the nondelegation doctrine"). To the extent there are any minor differences between the issues raised in the two suits, they are immaterial. *Compare, e.g.*, *PhRMA* Compl. ¶¶ 173-78 (combining all its statutory arguments into one claim), *with BIO* Compl. ¶¶ 104-123 (splitting their statutory arguments into two separate claims). Additionally, the two suits seek the same relief, *i.e.*, vacatur of the Rule along with accompanying injunctive and declaratory relief. *Compare BIO* Compl., at 44, Prayer for Relief, *with PhRMA* Compl., at 66, Prayer for Relief.

***Similarity of parties.*** As for the identity of the parties, both suits were filed against the same six Defendants: HHS, the Secretary of HHS (in his official capacity), CMS, the Administrator of CMS (in his official capacity), CMMI, and the Director of CMMI (in his official capacity). And the plaintiffs in both suits are pharmaceutical associations that represent (at least some) of the same Participating Manufacturers. For example, of the three publicly identified likely Participating Manufacturers—*i.e.*,

Biogen, Daiichi Sankyo, and Takeda Pharmaceuticals[1]—all are members of both PhRMA and the Plaintiff associations. *See* Our Member Companies, Pharm. Rsch. & Mfrs. of Am., https://phrma.org/about#members (last visited Nov. 20, 2026); Pls.' Rule 7.1 Disclosure & Civ. L.R. 3-15 Certification, ECF No. 3, https://perma.cc/57FT-8MXA. To be sure, at least nominally, the plaintiffs in the two suits are different associations. But that does not render the rule inapplicable. To the contrary, consistent with the underlying goals of the first-to-file rule, courts have applied it where, as here, "different parties challeng[e] the same regulation[]" in different jurisdictions. *Chamber of Com. of the U.S. v. Fed. Trade Comm'n*, 732 F. Supp. 3d 674, 682 (E.D. Tex. 2024). For the reasons outlined below, this Court should follow suit.

"[T]he first-to-file rule does not require exact identity of the parties." *Kohn*, 787 F.3d at 1240 (citing, among other cases, *Save Power Ltd. v. Syntek Fin. Corp*., 121 F.3d 947, 950 (5th Cir. 1997), which reasoned that "[t]he fact that [the named defendant] [was] not a party to the Original Action [did] not undermine the appropriateness of transfer in view of all the facts of this case"). Rather, "[t]he rule is satisfied if some of the parties in one matter are also in the other matter, regardless of whether there are additional, unmatched parties in one or both matters." *Pac. Coast Breaker, Inc. v. Conn. Elec., Inc*., No. 10-cv-3134-KJM (EFB), 2011 WL 2073796, at *3 (E.D. Cal. May 24, 2011) (citation modified). Where, as here, "the actions involve closely related questions or common subject matter," "courts generally do not require identical . . . parties." *Centocor, Inc. v. MedImmune, Inc*., No. 02-cv-03252-CRB, 2002 WL 31465299, at *3 (N.D. Cal. Oct. 22, 2002) (citation modified), *dismissed*, 55 F. App'x 928 (Fed. Cir. 2003).

Ultimately, the first-to-file rule "is not a rigid or inflexible rule to be mechanically applied, but rather is to be applied with a view to the dictates of sound judicial administration." *Pacesetter Sys.,* 678 F.2d at 95. Thus, where appropriate, courts focus on the *interests* represented by the nominal parties as opposed to the identity of the nominal parties. *See, e.g., Renesas Elecs. Am. Inc. v. Monterey Rsch., LLC*,

[1] After CMS published the Rule, industry press identified Biogen, Daiichi Sankyo, and Takeda Pharmaceuticals as likely subject to GLOBE. *See, e.g.*, Gabrielle Wanneh, *GLOBE Exemptions May Still Affect Handful of Drug-Making Companies*, Inside Health Pol'y (Oct. 2, 2026), archived at https://perma.cc/Y4FY-A6DX. Based on information presently available to CMS, these three manufacturers were correctly identified as among the likely Participating Manufacturers; a small number of other likely Participating Manufacturers have not yet been publicly identified.

No. 24-cv-06223-JSC, 2024 WL 5077109, at *3 (N.D. Cal. Dec. 10, 2024) (explaining that courts routinely find that parent companies and their subsidiaries are "substantially similar parties" because they "share common interests" (quoting *Aqua Connect, Inc. v. SHI Int'l Corp.*, No. 19-cv-05662-AB (JPR), 2019 WL 8883452, at *3 (C.D. Cal. Dec. 16, 2019))); *Marshak v. Reed*, No. 96-cv-2292-NG (MLO), 2000 WL 33152076, at *3 (E.D.N.Y. Oct. 17, 2000) ("Parties whose 'interests are clearly aligned' may be treated as if they were the same parties in deciding whether a later-filed action should be stayed in deference to an earlier action." (citation omitted)).

Consistent with this flexible approach, courts in various jurisdictions have applied the rule where, as here, different plaintiffs (whose interests are nevertheless aligned) challenge the same agency regulation in different jurisdictions. *See, e.g., Nat'l Health Fed'n v. Weinberger*, 518 F.2d 711 (7th Cir. 1975) (dismissing the second-filed action challenging an FDA regulation even though it involved different plaintiffs than the first-filed action); Order Denying Emergency Mot. at 4, *Martian Sales, Inc. v. Drug Enf't Admin.*, 26-cv-00254-ABJ, ECF No. 18 (W.D. Wyo. Sept. 14, 2026) (staying the second-filed action brought by different plaintiffs to a DEA Scheduling Order given the first-filed action); *Chamber of Com.*, 732 F. Supp. 3d (staying a second-filed action—which was brought by several associations to challenge an FTC Rule—because one of the members of one of the associations had already filed an identical APA challenge to the at-issue FTC Rule).

This application of the first-to-file rule "in the specific context of different parties challenging the same regulations," *id.* at 682, is consistent with the underlying goals of the rule—namely, to "maximize judicial economy, consistency, and comity," and prevent "gamesmanship," *Kohn*, 787 F.3d at 1240. On this score, the decision in *Chamber of Commerce* is particularly instructive. There, several associations brought an APA challenge to an FTC Rule by asserting associational standing on behalf of their member companies, including Ryan, LLC ("Ryan"), which was not itself a named plaintiff in *Chamber of Commerce*. But Ryan had already brought an identical APA challenge to that same FTC Rule a day earlier in a different district. *Chamber of Com.*, 732 F. Supp. 3d at 682. The district court applied the first-to-file rule even though there was, at least formally, no overlap between the named plaintiffs. *Id.* Among other things, it reasoned that "judicial effort would be substantially duplicated were the two cases to

proceed in parallel" given the fact that "[t]he parties present identical legal challenges to the FTC rule." *Id.* at 680. Relatedly, the court reasoned that "the purely legal nature of the APA claims reduces the comparative advantage of any one forum in resolving the dispute, as might arise if a forum had easier access to documents or property." *Id.* at 682.

The court also recognized that "there is at least a potential for inconsistent judgments in the two cases" and that "the comity doctrine, like the federal rules of procedure generally, strive to promote efficiency in litigation by consolidating such parallel litigation so that the claims of all affected are adjudicated together." *Id.* at 680-81. It acknowledged "the ongoing debate . . . about the viability of APA relief for nonparties" but recognized that "so long as APA remedies include nonparty relief, all parallel challenges to the same rulemaking present the possibility of overlapping remedies," which "requires coordinate courts in our federal system to manage their cases as to achieve comity." *Id.* at 681-82. Lastly, the court considered the fact that the two suits were "in similar procedural postures." *Id.* at 682.

Similarly here, applying the first-to-file rule would serve the rule's overarching goals. *First*, as explained above, the two suits present nearly identical APA challenges to GLOBE and are at similar stages of litigation. Thus, allowing the two suits to proceed in two separate jurisdictions would lead to "duplicative litigation." *Wallerstein v. Dole Fresh Vegetables, Inc.*, 967 F. Supp. 2d 1289, 1292 (N.D. Cal. 2013); *see also Hill v. Robert's Am. Gourmet Food, LLC*, No. 13-cv-00696-YGR, 2013 WL 3476801, at *5 (N.D. Cal. July 10, 2013) (concluding that a transfer would "promot[e] judicial efficiency" in part because the claims in the two actions "mirrored" each other and "both actions [were] nearing the motion to dismiss stage").

*Second*, applying the first-to-file rule here would guard against inconsistent rulings. Because both sets of plaintiffs assert identical APA claims against GLOBE and seek the exact same remedies that could ultimately run to the same set of drug manufacturers, there is a clear risk of inconsistent rulings. Applying the first-to-file rule "is therefore necessary to avoid the risk of inconsistent judicial decisions that would arise from multiple litigations of identical claims." *Henry v. Home Depot U.S.A., Inc*, No. 14-cv-04858-JST, 2016 WL 4538365, at *4 (N.D. Cal. Aug. 31, 2016).

*Third*, allowing the two suits to proceed in two different jurisdictions could potentially

"award[] . . . gamesmanship," *Kohn*, 787 F.3d at 1240, by providing the objecting drug manufacturers two separate opportunities to vacate GLOBE. As explained above, plaintiffs in both suits seek vacatur of the Rule. *See BIO* Compl., at 44, Prayer for Relief (request that the court "vacat[e] and set[] aside GLOBE under 5 U.S.C. § 706(2)"); *PhRMA* Compl., at 66, Prayer for Relief (requesting that the court "[h]old unlawful and set aside the Rule" under 5 U.S.C. § 706(2)). Notably, under settled precedent in the D.C. Circuit, the "ordinary" remedy for an APA violation is universal vacatur. *See Nat'l Min. Ass'n v. U.S. Army Corps of Eng'rs*, 145 F.3d 1399, 1409 (D.C. Cir. 1998) ("We have made clear that [w]hen a reviewing court determines that agency regulations are unlawful, the ordinary result is that the rules are vacated—not that their application to the individual petitioners is proscribed." (citation omitted) (alteration in original)).[2] Thus, a vacatur in *PhRMA* could provide complete relief to *all* affected drug manufacturers (regardless of their membership status). *See Hoban v. FDA*, No. 18-cv-269-JNE (LIB), 2018 WL 3122341, at *3 (recognizing that even if one court "can tailor potential relief [under the APA]," the other court "may choose to" issue the broader requested relief, thereby risking inconsistent judgments).

In this light, a parallel suit in this jurisdiction would serve no purpose *other than* to create a second opportunity for objecting drug manufacturers to vacate the Rule. This is precisely the type of "gamesmanship" the first-to-file rule seeks to prevent. *Kohn*, 787 F.3d at 1240. In *Young v. L'Oreal USA, Inc.*, for instance, a court in this district applied the first-to-file rule where "there [was] little doubt that Plaintiffs and plaintiffs' counsel [sought] to avoid" the adverse ruling by the court of appeals in the first-to-file suit, "and to illicit a favorable, yet inconsistent, judgment" in this district. 526 F. Supp. 3d 700, 707 (N.D. Cal. 2021). The court explained "[t]hat very conduct is exactly what the first-to-file rule is intended to prevent." *Id.*; *see also Chamber of Com.*, 732 F. Supp. 3d at 681 (explaining that "[i]f 'a single plaintiff can secure a remedy that rules the world' in a single APA action" then "a single district court and single reviewing court of appeals should" resolve the APA claims "rather than allowing multiple, parallel attempts at global relief, only one of which need succeed" (quoting *United States v. Texas*, 599 U.S. 670, 699 (2023) (Gorsuch, J., concurring))).

---

[2] Defendants reserve the right to oppose universal vacatur in both this suit and in *PhRMA*.

Lastly, the application of the first-to-file rule is particularly compelling where, as here, the associations in two suits are proceeding as "representatives" of substantially similar members with standing. *See Simon v. E. Ky. Welfare Rts. Org.,* 426 U.S. 26, 40 (1976) (explaining that in asserting associational standing, associations act as "representatives" of only those members who have standing). As explained above, only a single-digit number of Participating Manufacturers are expected to be subject to GLOBE on April 1, 2027, and of those Manufacturers, three have already been publicly identified—*i.e.*, Biogen, Daiichi Sankyo, and Takeda Pharmaceuticals. Tellingly, all three are members of *both* PhRMA and at least one of the Plaintiff associations. *See* Our Member Companies, Pharm. Rsch. & Mfrs. of Am., https://phrma.org/about#members (last visited Nov. 20, 2026), Pls.' Rule 7.1 Disclosure & Civ. L.R. 3-15 Certification, ECF No. 3, https://perma.cc/57FT-8MXA.

Thus, the Plaintiff associations in this case and PhRMA are representatives of (at least several) of the same Participating Manufacturers. In this light, the application of the first-to-file rule here would be analogous to the application of the rule to class actions where courts focus on whether the proposed classes "seek to *represent* at least some of the same individuals" instead of comparing the identities of the named plaintiffs. *Adoma v. Univ. of Phoenix, Inc.*, 711 F. Supp. 2d 1142, 1148 (E.D. Cal. 2010) (emphasis added); *Ross v. U.S. Bank Nat.'l Ass'n*, 542 F. Supp. 2d 1014, 1020 (N.D. Cal. 2008). Similarly, here, the associations in the two suits "seek to represent at least some of the same [Participating Manufacturers]," which bolsters the application of the first-to-file rule. *Adoma*, 711 F. Supp. 2d at 1148.

Plaintiffs cannot distract from this overlap in representation by touting the fact that their members "collectively total more than 1,000," whereas "PhRMA has 34 members." *See* Decl. Jeffrey L. Handwerker, ECF No. 17-1 ¶ 9. That comparison is a red herring. As explained above, to the extent Plaintiffs can even assert associational standing to begin with, it is "only" as "representatives of" their Participating-Manufacturer members—*i.e.*, the only "members who . . . could have brought suit in their own right" to challenge GLOBE. *See Simon,* 426 U.S. at 40. The remaining 99% of Plaintiffs' members are simply irrelevant for purposes of this litigation. In short, this Court should apply the first-to-file rule where, as here, the plaintiff associations in both suits seek to assert standing "on behalf of" at least some of the very same Participating Manufacturers that could—but have chosen not to—pursue their claims in

their own name. *See Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977) (explaining that associations proceed "on behalf of" "those members of the association actually injured" (citation omitted)).

Any other outcome would allow *any* corporation to bring *identical* claims against the government in *multiple* federal districts at once—as long as it joins multiple membership associations across the country. Indeed, that is not just a hypothetical—that seems to be the strategy here. At explained above, at the very least, we know that the three publicly identified Participating Manufacturers—Biogen, Daiichi Sankyo, and Takeda Pharmaceuticals—have already obtained memberships in both PhRMA and at least one of the three Plaintiff associations. Thus, allowing both suits to proceed would effectively permit some of the very same drug manufacturers to assert the same claims in two different jurisdictions even though they only need to prevail in one to obtain full relief. That is exactly the sort of inefficiency and gamesmanship that the first-to-file rule is designed to prevent. Indeed, such gamesmanship concerns are particularly pressing, where, as here, there seem to be no guardrails preventing drug manufacturers from becoming members of numerous associations at once. Consider, for instance, the sheer membership size of the Plaintiff associations, which makes clear that their membership-selection process is far from selective. *See* Pls.' Administrative Mot., ECF No. 17 at 1 (explaining that "BIO represents over 900" members "and CLS and Biocom California represent approximately 1,300 and 1,800 members, respectively"). In fact, it appears that virtually all of PhRMA's members are also members of at least one of the three Plaintiff associations.[3] In this light, it is difficult to see what (if anything) would prevent the same drug manufacturers from becoming members (if they are not already) of additional associations, which could then bring additional copycat suits in additional jurisdictions—all in the hopes that at least one court finds their arguments persuasive enough to vacate GLOBE. This Court should "avoid[] [encouraging or] awarding such gamesmanship." *Kohn*, 787 F.3d at 1240.

[3] Specifically, based on the available information, there are (at most) only three manufactures that are members of PhRMA, but not members or "affiliate member[s]" of BIO, CLS, or Biocom California. *Compare* Our Member Companies, Pharm. Rsch. & Mfrs. of Am., https://phrma.org/about#members (last visited Nov. 20, 2026), *with* Pls.' Rule 7.1 Disclosure & Civ. L.R. 3-15 Certification, ECF No. 3, https://perma.cc/57FT-8MXA.

**B. No Equitable Considerations Weigh Against the Application of the Rule.**

"Even where the three factors favor application of the first-to-file rule, a district court may decline to apply the rule based on equitable considerations." *Torres v. Segway, Inc.*, No. 25-cv-05005-BLF, 2026 WL 311504, at *6 (N.D. Cal. Feb. 5, 2026) (citing *Alltrade*, 946 F.3d at 628), *transferred to In re Segway Scooter Recall Litig.*, No. 25-cv-369-GBW, 2026 WL 2210976 (D. Del. July 31, 2026). "The circumstances under which an exception to the first-to-file rule typically will be made include bad faith, anticipatory suit, and forum shopping." *Alltrade*, 946 F.3d at 628 (citations omitted). "Still, the first-to-file rule 'should not be disregarded lightly.'" *Torres*, 2026 WL 311504, at *6 (quoting *Kohn*, 787 F.3d at 1239)).

Here, if anything, equitable concerns weigh strongly in favor of applying the first-to-file rule. Most obviously, the failure to apply the rule in this case opens up the United States to a risk of facing inconsistent court-ordered obligations. *See Henry*, 2016 WL 4538365, at *4 (applying the first-to-file rule where it was "necessary to avoid the risk of inconsistent judicial decisions").

This lawsuit also presents real concerns about forum-shopping. There is no doubt that this suit could have easily been brought in the District of Columbia. Indeed, BIO, which is the lead Plaintiff, is itself based in the District of Columbia. *See BIO* Compl. ¶ 17. Additionally, Plaintiffs' counsel were aware of the pending *PhRMA* suit in the District of Columbia *prior* to filing this suit. We know this because one of Plaintiffs' attorneys was physically present in the courtroom for the duration of the status conference in *PhRMA* on November 2, 2026—four days before they filed their duplicative Complaint in this district. *See* Decl. Pardis Gheibi, ECF No. 21-1 ¶ 2. Where, as here, "counsel for plaintiffs, prior to filing the [second] suit here, were aware of the [first-filed] suit" and "could have . . . as easily brought" their claims "in that district, which might then have led to a consolidation of the suits," "the filing of the [second] complaint [in a different jurisdiction] smacks of gamesmanship." *Nat'l Health Fed'n*, 518 F.2d at 714; *see also Young*, 526 F. Supp. 3d at 707 (concluding that the first-to-file rule was applicable where the posture of the second-to-file case left the court with "little doubt that Plaintiffs and plaintiffs' counsel" had engaged in forum-shopping). Applying the first-to-file rule here would ensure that Plaintiffs are not "so easily [allowed to] avoid real involvement in litigation in one forum, and then impose on a second

federal forum the burden of considering anew the same issues." *See Nat'l Health Fed'n*, 518 F.2d at 714.

Finally, the fact that both suits are at the preliminary stage of litigation further bolsters the application of the first-to-file rule. *See Hill*, 2013 WL 3476801, at *5 (concluding that a transfer would "promot[e] judicial efficiency" in part because "both actions [were] nearing the motion to dismiss stage").

**C. The Court Should Dismiss the Suit Without Prejudice.**

"After determining that the first-to-file rule applies, the Court must decide whether to dismiss, stay, or transfer the case." *Bodley v. Whirlpool Corp.*, No. 17-cv-05436-JST, 2018 WL 2357640, at *4 (N.D. Cal. May 24, 2018) (citing *Alltrade*, 946 F.3d at 623). "[T]he second district court has discretion to transfer, stay, or dismiss the second case in the interest of efficiency and judicial economy." *In re Bozic*, 888 F.3d at 1051-52 (quoting *Cedars–Sinai Med. Ctr. v. Shalala*, 125 F.3d 765, 769 (9th Cir. 1997)).

Here, dismissal without prejudice is the most appropriate remedy. As courts in this jurisdiction have repeatedly explained, "[d]ismissal is proper where the court of first filing provides adequate remedies." *Molander v. Google LLC*, 473 F. Supp. 3d 1013, 1020 (N.D. Cal. 2020) (citing *Alltrade*, 946 F.2d at 627-28); *Intersearch Worldwide*, 544 F. Supp. 2d at 963 (same). Where, as here, there are no impediments to Plaintiffs seeking the relief they seek from this Court in the District of Columbia, then dismissal is warranted. *See SMIC, Americas v. Innovative Foundry Techs. LLC*, 473 F. Supp. 3d 1021, 1028 (N.D. Cal. 2020) (explaining that dismissal was warranted where the first-filed district provided adequate remedies and the first-filed action was "still in the early stages, and Plaintiffs ha[d] not meaningfully asserted any bar to presenting the claims or defenses asserted here in that action"); *cf. Molander*, 473 F. Supp. 3d at 1020 (explaining that "the court of second filing should consider a stay" if, for instance, "there are concerns regarding the availability of remedies in the court of first filing, or regarding its jurisdiction over claims which might implicate a statute of limitations if dismissed by that court, or if that court is preparing to transfer its matter to the court of second filing").

There is no doubt that the District of Columbia is capable of providing Plaintiffs with the same relief they seek from this Court—*i.e.*, vacatur of the Rule along with injunctive and declaratory relief. *See BIO* Compl., at 44, Prayer for Relief. Indeed, that is precisely the relief sought by PhRMA. *See PhRMA* Compl., at 66, Prayer for Relief. Thus, because the District of Columbia "provides adequate remedies,"

dismissal without prejudice is the appropriate remedy. *Intersearch Worldwide*, 544 F. Supp. 2d at 963 (citing *Alltrade*, 946 F.2d at 627-28); *see also SMIC*, 473 F. Supp. 3d at 1028 (explaining that "dismissal [in such circumstances] would promote a 'comprehensive disposition of Litigation' and conserve judicial resources" (quoting *Ruckus Wireless, Inc. v. Harris Corp.*, No. 11-cv-01944-LHK, 2012 WL 588792, at *6 (N.D. Cal. Feb. 22, 2012)). In fact, dismissal is particularly apt where, as here, the claims in the two suits are "identical," as opposed to merely "substantially similar." *Cf. Torres*, 2026 WL 311504, at *7 ("Courts generally prefer transfer under the first-to-file rule where, as here, the claims asserted in the consolidated action in Delaware and the California Action are substantially similar, but not identical.").

**D. In the Alternative, This Court Should Transfer This Case to the District of Columbia.**

If this Court does not dismiss the suit without prejudice, it should transfer it to the District of Columbia to conserve judicial resources and avoid conflicting judgments. *See id.* (explaining that "transfer is appropriate because it avoids placing an unnecessary burden on the federal judiciary and avoids the embarrassment of conflicting judgments" (citation modified)).

As explained above, the APA claims here are identical to those raised in *PhRMA*, and the parties there have already agreed to a summary-judgment briefing schedule to resolve those APA claims through cross-motions for summary judgment. *See* Scheduling Order, *PhRMA v. Kennedy*, ECF No. 20. At this stage, non-transfer would "duplicate" the work of the *PhRMA* Court, "all while risking conflicting judgments." *See Young*, 526 F. Supp. 3d at 708 (citation omitted). Thus, "the three pillars supporting the first-to-file rule—economy, consistency, and comity—warrant transfer of this case" to the District of Columbia. *Id.; see also Wallerstein*, 967 F. Supp. 2d at 1298 (transferring the case where the party opposing transfer "ha[d] not demonstrated why equity prevents transfer of this case in light of the conservation of resources and significant judicial efficiency to be gained").

## II. TRANSFER IS ALSO WARRANTED UNDER 28 U.S.C. § 1404(a).

Even if this Court declines to apply the first-to-file rule, transfer is independently warranted under 28 U.S.C. § 1404(a), which provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." "Under § 1404(a), the district court has discretion 'to adjudicate motions for transfer

according to an individualized, case-by-case consideration of convenience and fairness.'" *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000) (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)).

This case "might have been brought" in the District of Columbia, where several of the parties (including BIO) reside, *see* 28 U.S.C. § 1391(e)(1)(A), (C), and where "a substantial part of the events or omissions giving rise to the claim occurred," *id.* § 1391(e)(1)(B). Moreover, "public-interest factors of systemic integrity and fairness"—which "come under the heading of 'the interest of justice,'" *Stewart Org..*, 487 U.S. at 30—also support transfer to eliminate the risk of inconsistent court-ordered obligations. Indeed, courts routinely transfer cases to avoid inconsistent judgments. *See, e.g.*, *Hoban*, 2018 WL 3122341, at *3 (transferring a challenge to an FDA rule under Section 1404(a), while explaining that "[t]here would . . . be inconsistent judgments if this Court were to deny relief or grant relief different from that in the District of Columbia," and that "[t]ransfer obviates this possibility"); *Lexington v. Cheek & Zeehandelar, LLP*, No. 1:06-cv-2029, 2007 WL 593560, at *2 (N.D. Ohio Feb. 21 2007) (granting motion to transfer under Section 1404(a), where denying motion "would be an inefficient use of judicial resources and could result in potentially inconsistent rulings on a variety of matters"); *Alltech, Inc. v. Myriad Dev., Inc.*, No. 08-cv-00045, 2008 WL 5119670, at *5 (W.D. Va. Dec. 5, 2008) ("[T]hough the two lawsuits are not identical, and therefore there is not necessarily a risk of inconsistent judgments, the suits overlap enough that this court risks reaching conclusions . . . that may be inconsistent with the Texas litigation's outcome.").

In addition, most of the remaining factors are either neutral or support transfer to the District of Columbia.[4] For instance, "the location" of operative facts, "the respective parties' contacts with the forum," "the contacts relating to the plaintiff's cause of action in the chosen forum," and "the differences in the costs of litigation in the two forums," *Jones*, 211 F.3d at 498-99, support transfer—specifically, all the defendants are located in the D.C.-Maryland metropolitan area, where the relevant agency decisions

[4] The following factors are inapplicable and thus neutral: "the state that is most familiar with the governing law," "the availability of compulsory process to compel attendance of unwilling non-party witnesses," "the ease of access to sources of proof," "the presence of a forum selection clause," and "the relevant public policy of the forum state, if any." *Jones*, 211 F.3d at 498-99.

were made; the lead Plaintiff BIO as well as Plaintiffs' lead counsel are both based in the District of Columbia; and Government counsel will already be litigating *PhRMA* in the District of Columbia. *See Hoban*, 2018 WL 3122341, at *2 (explaining that "fees and costs will be much higher if the motion to transfer is denied and counsel for Plaintiffs here and in the District of Columbia must travel to multiple courts and undergo multiple rounds of dispositive motions" and that "transfer to the District of Columbia will minimize costs to [government] Defendants and, by extension, the taxpayers"); *see also* Order, *Rave Salon Inc. v. Gottlieb*, No. 18-cv-0237-AJF, ECF No. 27 at 1 (N.D. Tex. June 4, 2018) (concluding that transferring a duplicative challenge to an agency action was in the interests of justice given Section 1404(a)'s purpose to "protect litigants, witnesses, and the public against unnecessary inconvenience and expense" (citation omitted)).

To be sure, there is one factor that weighs in favor of the Northern District of California: "the plaintiff's choice of forum." *Jones*, 211 F.3d at 498. But where, as here, "the operative facts have not occurred within the forum, Plaintiff's choice is entitled to minimal deference." *Goldman v. Unum Life Ins. Co. of Am.*, 838 F. Supp. 3d 1020, 1029 (N.D. Cal. 2026) (citing *Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987)). Nor does this district have any notable "interest in the parties or subject matter." *Lou*, 834 F.2d at 739. After all, the lead Plaintiff BIO is itself located in the District of Columbia, *BIO* Compl. ¶ 17, and Plaintiff Biocom California is located in the *Southern* District of California, *id.* ¶ 23. So, only one of the three Plaintiffs—*i.e.*, CLS—even qualifies as a local party. *Id.* ¶ 20. And there is nothing unique about CLS's interest that would warrant bringing all the other parties and counsel to this district. At most, Plaintiffs claim that "most of" CLS's members "are located in California." *See* Pls.' Administrative Mot., ECF No. 17 at 1. Putting aside the fact that California itself has three *other* federal districts, Plaintiffs are once again obfuscating the relevant "membership" inquiry. As explained above, "most of" Plaintiffs' members are irrelevant for purposes of this litigation because they are not Participating Manufacturers. Notably, of the three Participating Manufacturers that have been publicly identified, none is located in California (let alone, in this district).[5]

[5] Biogen's corporate headquarters is in Massachusetts. *See Biogen*, https://www.biogen.com/company/contact-us.html (last visited Nov. 22, 2026). Daiichi Sankyo has U.S. offices in

Given the lack of any special interest in this district, litigating this suit here will only lead to the duplication of the *PhRMA* lawsuit. In fact, as explained above, one might draw the inference that Plaintiffs' choice of forum was an attempt *to* duplicate the *PhRMA* lawsuit in a district *other than* the District of Columbia. In such circumstances, deferring to Plaintiffs' chosen forum is not only unnecessary, but inappropriate. *See Goldman*, 838 F. Supp. 3d at 1029 ("A court may further disregard the plaintiff's chosen venue if it is a result of forum shopping.").

"In sum, transfer under § 1404(a) will prevent the unnecessary expenditure of judicial resources, avoid wasteful and duplicative litigation, and avert the possibility of inconsistent judgments. Judicial economy therefore favors transfer and clearly overrides any deference owed Plaintiffs' choice of forum." *Hoban*, 2018 WL 3122341, at *3.

**CONCLUSION**

For these reasons, this Court should dismiss this suit without prejudice, or, in the alternative, transfer it to the U.S. District Court for the District of Columbia.

DATE: November 23, 2026

JONATHAN D. GUYNN
Acting Assistant Attorney General
Civil Division

MICHELLE R. BENNETT
Assistant Branch Director

/s/ Pardis Gheibi
STEPHEN M. PEZZI (D.C. Bar 995500)
Chief Litigation Counsel
PARDIS GHEIBI (D.C. Bar 90004767)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20005

New Jersey and New York. *See Daiichi Sankyo*, https://www.daiichisankyo.com/about_us/corporate_info/group/ (last visited Nov. 22, 2026). The U.S. "operational center" for Takeda Pharmaceuticals is in Massachusetts. *See Takeda Pharmaceuticals*, https://www.takeda.com/en-us/main-addresses/ (last visited Nov. 22, 2026).

Tel.: (202) 305-3246
Email: pardis.gheibi@usdoj.gov

*Counsel for Defendants*